UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUSTY WINDSOR,

    Plaintiff,

    v.                                            CAUSE NO. 3:22-CV-183-JD-MGG

IND DEPT OF CORRS, et al.,

    Defendants.

OPINION AND ORDER

Rusty Windsor, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Windsor alleges that, in early 2021, numerous offenders had threatened his life. On March 24, 2001, an inmate put a razor blade on Windsor's cabinet with a note reading, "Either you kill yourself or we will." ECF 2 at 2. Windsor reported the threat, and Lt. Cabinaw[1] responding by indicating he would move Windsor. Lt. Cabinaw,

---

[1] Lt. Cabinaw is not a defendant in this action.

however, intended to move Windsor back to a housing unit where his life had been threatened the previous month. Windsor explained that he would not be safe if housed in that unit, but he was still moved to that unit. Because Windsor was afraid, he found a razor and slit his wrists. Lt. Cabinaw and Sgt. Hope[2] found him, stripped him of his clothes, and placed him in a cell in the restrictive housing unit. Four hours later, Windsor was provided with one shirt, one pair of shorts, and one pair of socks. He was not provided with a mattress, sheets, a blanket, towels, a washcloth, or other hygiene items until April 4, 2021. The temperature was approximately forty to fifty degrees, and Windsor had to sleep on bare metal wearing only a t-shirt, boxers, and socks. Windsor asked Lt. Lott, Sgt. Haskel, and Sgt. Skovol for bedding and hygiene items – they told him they had to wait until Windsor's property was brought over so they could see what he had before any property could be issued. When Windsor complained about waiting, Lt. Lott, Sgt. Haskel, and Sgt. Skovol told Windsor to file a grievance. Windsor filed a separate informal grievance against each officer, but he received no response. Windsor had face-to-face conversations about this with Captain Iatoda on four separate occasions. Captain Iatoda also told Windsor to file a grievance, but when Windsor filed it, Captain Iatoda did not respond.

As an initial matter, Windsor has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance

---

[2] Sgt. Hope is also not a defendant.

procedure). Therefore, he may not proceed on any claim based on failure to respond to a grievance.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical

3

case of deliberate indifference."). While a short-term deprivation of bedding does not rise to the level of a constitutional violation, lack of proper bedding for more than a week may amount to an Eighth Amendment violation. *See Townsend v. Cooper,* 759 F.3d 678, 687 (7th Cir. 2014*).* Giving Windsor the inferences to which he is entitled at this stage, he has stated a plausible claim for monetary damages against Lt. Lott, Sgt. Haskel, Sgt. Skovol, and Captain Iatoda with respect to the conditions of his confinement in restrictive housing from March 24, 2021, to April 4, 2021.

Windsor also alleges that, for approximately five months, he has been housed in unsafe and unsanitary conditions in the restricted housing unit. He has shared his cell with mice, cockroaches, and other insects. He reports that he awoke to find a mouse on his bed. He also found feces from a mouse on his bed and in his food. During this same period, Windsor was provided with only with a small bar of soap and a rubber toothbrush for hygiene; he was not provided with shampoo or deodorant. And, during this time-period, he sometimes went as long as five weeks without receiving a clean t-shirt, shorts, socks, towel, or washcloth. The prison's policy[3] allows him to exchange these items every three days, when he is permitted to shower, but ninety percent of the time, there were no clean clothes available. Windsor personally talked to Warden Neal, Assistant Warden Buss, and Major Wardlow about the problems with mice, roaches, and

---

[3] To the extent Windsor's claim is based on the prison's violation of its own policy, he does not state a claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

inadequate hygiene supplies. He was told they are aware of the problems and working on solving them. Since then, nothing has been done.

While Windsor would like access to shampoo and deodorant, the lack of these items does not deprive Windsor of the minimal civilized measure of life's necessities. That the defendants only provide small bars of soap may be inconvenient, but it also does not deprive Windsor of the minimal civilized measure of life's necessities. Neither does provision of only a rubber toothbrush.

The allegations regarding infrequent clothing exchanges likewise do not implicate constitutional concerns. "Having to wear the same clothes for two or three weeks is not a deprivation of constitutional magnitude." *Gordon v. Sheahan*, No. 96 C 1784, 1997 WL 136699, at *8 (N.D. Ill. Mar. 24, 1997). At times, Windsor indicates he went longer than two or three weeks without clean clothes, but he concedes he was provided with bar soap and permitted to shower every three days. It is unclear what prevented Windsor from laundering his own clothes with the soap he was provided. *See Passmore v. Josephson*, 376 F. Supp. 3d 874, 881-82 (N.D. Ill. 2019) (collecting cases finding no constitutional violation where inmates had the ability to launder their clothes themselves). Moreover, it is unclear how Windsor was harmed by the lack of clean laundry more regularly. *Myers v. Ind. Dep't of Corr.*, 655 F. App'x 500, 503-04 (7th Cir. 2016) (discussing when inadequate laundry procedures might violate the Eighth Amendment). The risk of harm from dirty clothes is too speculative, without more, to establish "an unreasonable risk of serious damage to the prisoner's future health." *See*

*Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999). Therefore, Windsor may not proceed on his claims related to laundry.

Prolonged exposure to infestations of mice and roaches can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D. Ill. 2016). However, Windsor provides little detail regarding the magnitude of the infestation. He only mentions in passing that there is a problem with roaches and other insects. He describes seeing a mouse on his bed and feces from a mouse on is bed and in his food. He does not, however, provide any dates, timeframes, or supporting details regarding how he, personally, was affected by these conditions. *See e.g. Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015) (inmate failed to state a claim when he alleged the jail was infested with mice and cockroaches but did not provide sufficient details which "left [the court] in the dark as to how extensive the infestations are and how the pests affect him").

Windsor also believes that the conditions are not being remedied in retaliation for the murder of a correctional officer – something he had nothing to do with. The First Amendment prohibits retaliation for engaging in activity protected by the First Amendment. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Windsor, however, has not identified any activity protected by the First Amendment. Therefore, he may not proceed on a retaliation claim.

Windsor has sued Indiana Department of Correction and several defendants in their official capacity, claiming that there are unconstitutional policies in place that caused these harms. But "a suit against a[n] official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no

different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). However, the Eleventh Amendment generally precludes a citizen from suing a State or one of its agencies or departments in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are exceptions to Eleventh Amendment immunity, but none are applicable here. *See MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999); *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Because the State is immune from suit pursuant to the Eleventh Amendment, Windsor cannot sue the Indiana Department of Correction or any of its officers in their official capacity for monetary damages.

For these reasons, the court:

(1) GRANTS Rusty Windsor leave to proceed against Lt. Lott, Sgt. Haskel, Sgt. Skovol, and Captain Iatoda in their individual capacity for compensatory and punitive damages for knowingly depriving him constitutional conditions of confinement from March 24, 2021, to April 4, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Indiana Department of Correction, Warden Ron Neal, Assistant Deputy Warden Dawn Buss, and Major Wardlow;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Lt. Lott, Sgt. Haskel, Sgt. Skovol, and Captain Iatoda at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Lt. Lott, Sgt. Haskel, Sgt. Skovol, and Captain Iatoda to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 23, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT